UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---------------------------------------------------X

| | |
|---|---|
| ROBERT McNULTY, | CIVIL ACTION |
| Plaintiff | NO. |
| VS. | |
| METRO-NORTH RAILROAD COMPANY, | |
| Defendant | |

---------------------------------------------------X

## COMPLAINT

## NATURE OF ACTION

1. The plaintiff brings this action against the defendant for injuries suffered by him while in the employ of the defendant Railroad.

## JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51 *et seq.* Venue properly lies in this Court pursuant to 45 U.S.C. §56.

## PARTIES

3. The plaintiff is of Bethany, Connecticut.

4. The defendant, Metro-North Railroad Company, is a railroad corporation duly established by law, and having a usual place of business in New York, New York.

## FACTS

5. During all times herein mentioned, the defendant was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business between New York, New York, and New Haven, Connecticut.

6. At the time the plaintiff received the injuries complained of, he was employed by the defendant Railroad as a Conductor at or about Bridgeport, Connecticut.

7. At the time the plaintiff received the injuries complained of, the defendant Railroad was engaged in interstate commerce and the plaintiff was employed in furtherance of said commerce.

8. On or about May 17, 2013, the plaintiff was engaged in his duties as a Conductor at or about Bridgeport, Connecticut, which yard, lines, tracks, rails, joint bars, ballast, engines, trains, shops and all other equipment and appliances appurtenant thereto were owned and/or operated and/or controlled and/or maintained by the defendant corporation.

9. At the time the plaintiff received the injuries complained of, the defendant Railroad was responsible for the inspection, maintenance, repair, and condition of the tracks between New Haven, Connecticut and Grand Central Terminal including the tracks in Bridgeport, Connecticut.

10. At the time the plaintiff received the injuries complained of, he was a Conductor on the westbound train 1581 which departed New Haven and was headed to Grand Central Terminal.

11. At the time the plaintiff received the injuries complained of, at approximately 6:01 p.m. on Friday, May 17, 2013, an eastbound Metro-North Railroad passenger Train 1548 (which had departed Grand Central Terminal, New York and was headed to New Haven, Connecticut) derailed near milepost 53.25 on Track number 4.

12. At the time the plaintiff received the injuries complained of, plaintiff's train was proceeding on Track 2 in Bridgeport, Connecticut, when the plaintiff felt the train go into emergency braking and slam into the front side of the 3rd car and into the front of the 4th car on Train 1548 and then derail.

13. Approximately six weeks before, on April 4, 2013, Metro-North inspectors discovered that a pair of "compromise joint bars" connecting two different size sections of rails were cracked, a condition that can occur when there is inadequate support beneath a section of track.

14. The compromise joint bars were replaced on April 4, 2013 and there was an excessive mismatch with the larger section of rail 0.3 inches higher than the smaller section of rail.

15. After the bars were replaced, problems again emerged two days before the accident on May 15, 2013. Inspectors reported a "pumping condition," meaning the ties and rails were moving up and down under the weight of trains, and "inadequate ballast support".

16. That inspection on May 15, 2013 revealed that there was an insulated rail joint with inadequate supporting ballast and indications of vertical movement of the track system under load at catenary No. 734 on Track 4 near MP 53.25.

17. The point of derailment (POD) occurred at MP 53.25.

18. At all relevant times hereto Metro-North had a "Deficient safety culture" that prized on-time performance at the expense of protecting riders and workers.

19. Metro-North's operations control center pressured workers who struggled to secure the track time needed to perform essential repairs.

20. Metro-North has emphasized on-time performance to the detriment of safe operations and adequate maintenance of its infrastructure.

21. Track Inspectors were pressured to rush inspections while riding in hi-rail inspection vehicles on Track 4.

22. It was difficult for the Track Department to schedule track maintenance due to the priority of on-time train schedule performance.

## AS AND FOR A FIRST CAUSE OF ACTION

23. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 22 of this Complaint with the same force and effect as if set forth under this cause of action.

24. The defendant Railroad, its agents, servants, and employees were negligent in one or more of the following ways:

   a. failing to repair Track 4 before the derailment; and/or

   b. failing to provide sufficient ballast support for Track 4 before the derailment; and/or

   c. failing to adequately inspect and maintain Track 4 and the ballast underneath it before the derailment; and/or

4

d. failing to issue a speed restriction or remove Track 4 from service prior the derailment; and/or

e. inadequately training track inspectors; and/or

f. failing to follow its own schedule for replacing ties and resurfacing track beds; and/or

g. failing to measure the height of the mismatch rail sections and the movement of the track in accordance with federal and Metro-North standards; and/or

h. failing to weld the rail after installing compromise joint bars; and/or

i. emphasizing on-time performance to the detriment of safe operations and adequate maintenance of its infrastructure; and/or

j. pressuring workers not to secure track time needed to perform necessary repairs so better on time performance could be obtained; and/or

k. failing to act in a reasonably prudent manner under the facts and circumstances surrounding the derailment.

25. As a result of the train wreck caused by the negligence of the defendant Railroad, its agents, servants, or employees, the plaintiff was thrown to the floor, and has suffered Post-Traumatic Stress Disorder.

26. As a result of the train wreck caused by the defendant Railroad, its agents, servants, or employees' failure to use reasonable care to provide the plaintiff with a safe place in which to work, the plaintiff was thrown to the floor and has suffered Post-Traumatic Stress Disorder.

27. As a result of the said injuries, the plaintiff has suffered and will suffer lost wages and benefits, incurred medical expenses, suffered pain and mental anguish and will continue to do so in the future, and has an impairment to his future earning capacity.

WHEREFORE, in order to fairly and justly compensate the negligently injured plaintiff and thereby promote safe operating conditions on the defendant Railroad, the plaintiff demands a judgment for monetary damages against the defendant Railroad in addition to any further relief the Court deems just and equitable.

<u>PLAINTIFF DEMANDS TRIAL BY JURY</u>.

By his attorneys,

By _____
George J. Cahill, Jr. (ct04485)
CAHILL & PERRY, P.C.
43 Trumbull Street
New Haven, Connecticut 06510
Telephone:  (203) 777-1000
Fax:  (203) 865-5904
cahill@trainlaw.com